UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SANDRA MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-12854-JEK |
| | ) | |
| SIEMENS MEDICAL SOLUTIONS | ) | |
| USA, INC. and SIEMENS HEALTHCARE | ) | |
| DIAGNOSTICS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON THE MOTION TO DISMISS OF DEFENDANT SIEMENS MEDICAL SOLUTIONS USA, INC.**

**KOBICK, J.**

Plaintiff Sandra Miller brings employment discrimination claims against defendants Siemens Medical Solutions USA, Inc. ("Siemens Medical") and Siemens Healthcare Diagnostics, Inc. ("Siemens Healthcare"). She alleges that the defendants discriminated against her on the basis of age and disability and that they unlawfully terminated her in retaliation for requesting a reasonable accommodation and for reporting discriminatory acts, in violation of federal and state law. Siemens Medical has moved to dismiss all claims against it, arguing that it cannot be held liable for her claims because it is neither a single integrated enterprise nor a joint employer with Siemens Healthcare. Because Miller has plausibly alleged that Siemens Medical and Siemens Healthcare operated as a single integrated enterprise, the motion will be denied.

**BACKGROUND**

The following facts, drawn from the complaint and the documents incorporated by reference therein, are accepted as true for purposes of the motion to dismiss. *See Bazinet v. Beth*

*Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024). Miller is a 65-year-old woman with several disabilities. ECF 1, ¶ 13. Due to trauma she experienced while serving in the military, she suffers from posttraumatic stress disorder, anxiety, and panic attacks. *Id.* ¶ 14. She also has irritable bowel syndrome, which causes painful abdominal symptoms and weakens her immune system. *Id.* ¶ 15.

Miller began working for the defendants as a contractor in March 2021. *Id.* ¶ 16. She served as a Senior Supply Chain Analyst and worked a "hybrid/remote" schedule. *Id.* She told the defendants about her disabilities when she was hired. *Id.* In May 2022, the defendants offered Miller a full-time position as a "Procurement Data Analyst / Procurement Specialist 3, Level 07 S30," due to her good performance. *Id.* ¶¶ 17-18. This new role had similar responsibilities to her prior role. *Id.* ¶ 17. Miller alleges that, in this new position, she worked for the Siemens Healthineers Organization. *Id.* ¶ 18. Siemens Healthineers is the parent company of the defendants, Siemens Medical and Siemens Healthcare. ECF 16, at 1. Siemens Healthcare is wholly owned by Siemens Medical. *Id.*

Miller was told by a human resources representative that her full-time position, like her contractor position, would be hybrid. ECF 1, ¶ 21. She later learned that the role would require full-time in-person work. *Id.* Miller's manager, Kathryn Derwin, initially dismissed Miller's request for a hybrid schedule based on her health concerns, *id.* ¶ 22, but Miller was later granted a permanent remote work schedule as an accommodation for her disabilities, *id.* ¶ 29. At some point during her employment, Miller reported to the human resources department that she was experiencing discrimination based on her age and disabilities. *Id.* ¶ 30. The defendants' Employee Relations team conducted an internal investigation, *id.* ¶ 31, which was allegedly "mishandl[ed] . . . and resulted in a finding that [her] claims were unsubstantiated," *id.* ¶ 32.

2

Miller alleges that, soon after this finding, she was terminated in retaliation for her report of discrimination and her request for a reasonable accommodation. *Id*. ¶ 33. On July 27, 2023, the defendants told Miller that she was being laid off due to a reduction in force. *Id.* ¶ 34. Her termination letter, printed on "Siemens Healthineers" letterhead, stated that Miller's position "with Siemens Healthcare" had been eliminated. ECF 1, Ex. 1, at 1. In the section of the letter addressing severance pay and disposition of Miller's employee benefits, it stated that Miller could have participated in a 401(k) plan through "Siemens Medical." *Id.* The letter also discussed severance pay if Miller were to be rehired by "Siemens Healthcare . . . or another Siemens Operating Company," and it thanked Miller for her service to "Siemens Healthcare." *Id.* at 2.

In November 2024, after exhausting her administrative remedies, Miller filed this lawsuit against Siemens Medical and Siemens Healthcare. ECF 1. Her complaint asserts claims against both defendants for disability discrimination and retaliation, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (Count 1 and 2, respectively); age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (Count 3); and age and disability discrimination and retaliation, in violation of M.G.L. c. 151B (Counts 4 through 7). ECF 1, ¶¶ 46-52. The complaint also asserts that Miller was jointly employed by Siemens Healthcare and Siemens Medical. *Id.* ¶¶ 39-41. The companies both operate at 333 Coney St. in East Walpole, Massachusetts, where she worked during her employment. *Id.* ¶ 39. Miller alleges that both defendants "act in the interest of each other with respect to employees, pay employees by the same or [an] agreed upon method, and share control over the employees and their performance." *Id.* ¶ 40. She also alleges that "[e]ach Defendant possessed substantial control over [her] working conditions, and over the policies and practices

with respect to the employment and compensation of [her], as well as the tasks and duties she was expected to perform." *Id.* ¶ 41.

Siemens Medical moved to dismiss all claims against it under Federal Rule of Civil Procedure 12(b)(6), contending that Miller has not plausibly alleged that it jointly employed her with Siemens Healthcare or that it acted with Siemens Healthcare as a single integrated employer. ECF 6, 12. After receiving Miller's opposition and Siemens Medical's reply, the Court held a hearing and took the motion under advisement. ECF 9, 12, 15.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted.'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## DISCUSSION

Siemens Medical contends that Miller's claims against it must be dismissed because she has not plausibly alleged that it was her employer or that it jointly employed her along with Siemens Healthcare. In employment discrimination cases, a plaintiff may seek to hold an employer liable under a "single integrated employer" theory or a "joint employer" theory. *Burnett v. Ocean*

4

*Props., Ltd.*, 987 F.3d 57, 65, 68 (1st Cir. 2021). These are "alternative theories of an employment relationship." *Id.* at 68 (1st Cir. 2021). Miller contends that she has plausibly alleged that, under either theory, Siemens Medical is liable for the alleged discrimination and retaliation she experienced.

"Under the 'single [integrated] employer' doctrine, two nominally separate companies may be so interrelated that they constitute a single employer subject to liability." *Torres-Negron v. Merck & Co., Inc.*, 488 F.3d 34, 40-41 (1st Cir. 2007). To determine if two or more companies should count as a single integrated employer, courts consider four factors: "(i) 'centralized control over labor relations'; (ii) 'interrelation between operations'; (iii) 'common management'; and (iv) 'common ownership.'" *Burnett*, 987 F.3d at 65 (quoting *Torres-Negron*, 488 F.3d at 42 & n.8). "Not all four factors are necessary to establish a single employer relationship." *Id.* at 65, 67 (finding single integrated employer with only three factors met); *Torres-Negron*, 488 F.3d at 43 (same). "'Rather, the test should be applied flexibly, placing special emphasis on the control of employment decisions.'" *Burnett*, 987 F.3d at 65 (quoting *Torres-Negron*, 488 F.3d at 42).[1]

The first factor, concerning centralized control over labor relations, "examines control of employment decisions." *Id.* Miller has plausibly alleged that Siemens Medical, the parent company of Siemens Healthcare, exercised some control over decisions related to her employment. The letterhead of Miller's termination letter referenced Siemens Healthineers, the parent company of

---

[1] The First Circuit has applied a single integrated employer test to claims under the ADA. *See Burnett*, 987 F.3d at 65; *Torres-Negron*, 488 F.3d at 43. The parties do not dispute that the same test applies to Miller's claims under the ADEA and Chapter 151B. Indeed, courts have applied the single integrated employer test to a range of employment statutes. *See, e.g.*, *Torres-Negron*, 488 F.3d at 40-41 (applying test to Title VII claims); *Engelhardt v. S.P. Richards Co.*, 472 F.3d 1, 4-5 (1st Cir. 2006) (applying test to Family and Medical Leave Act claims); *Romano v. U-Haul Int'l*, 233 F.3d 655, 662 (1st Cir. 2000) (explaining that the test was developed to determine if two interrelated companies should be treated as one entity for purposes of National Labor Relations Act claims).

5

Siemens Medical and Siemens Healthcare, suggesting that Siemens Healthineers bore some responsibility for its subsidiaries' decision to terminate her employment. ECF 1, Ex. 1, at 1; *see Torres-Negron*, 488 F.3d at 43 (finding evidence of centralized control where the parent and two subsidiaries had control over decision to terminate employee). Indeed, Miller believed that she worked for Siemens Healthineers. ECF 1, ¶ 18; *see Burnett*, 987 F.3d at 65 (noting the corporate entity that the employee believed to be his employer). Miller's termination letter further explained that her severance pay could be reduced if she were to be rehired by Siemens Healthcare *or* "another Siemens Operating Company," ECF 1, Ex. 1, at 2, suggesting some shared control by entities within the Siemens Operating Company family over Miller's compensation or benefits, *see Burnett*, 987 F.3d at 66 (finding evidence of centralized control over labor relations where employee received communications about wages and benefits from two entities). Miller has, moreover, alleged that Siemens Medical and Siemens Healthcare "pa[id] employees by the same or [an] agreed upon method," "share[d] control over employees and their performance," and shared control over the policies and practices applicable to her employment, job responsibilities, and compensation. ECF 1, ¶¶ 40-41. At this early stage in the case, this is enough to plausibly allege that there existed some centralized control over labor relations between Siemens Medical and Siemens Healthcare. *See Engelhardt*, 472 F.3d at 7 (no centralized control when a subsidiary made its "own, independent decisions" around employment, and when there was "no evidence to suggest that [the subsidiary] deferred to [its parent] in making hiring, firing, assignment, scheduling, or compensation decisions").

The second factor, concerning the interrelation between operations, looks to whether the two companies "'shared employees, services, records, office space, and equipment,'" whether they "'commingled finances,'" and whether the parent "'handl[ed] . . . subsidiary tasks such as payroll,

6

books, and tax returns.'" *Burnett*, 987 F.3d at 66 (quoting *Romano v. U-Haul Int'l.*, 233 F.3d 655, 667 n.7 (1st Cir. 2000)). A court may also consider whether one company "'exert[ed] considerable influence' over the other entity's 'advertising and other decisions.'" *Id.* (quoting *Romano*, 233 F.3d at 666-67). Although her allegations on this factor are thin, Miller has plausibly alleged some interrelation between the operations of Siemens Medical and Siemens Healthcare. The two entities operated out of the same business location in East Walpole, Massachusetts. *See* ECF 1, ¶ 39; *Burnett*, 987 F.3d at 67 (finding evidence of interrelation between operations when companies "shared office space" and serviced "same hotels and resorts"); *Engelhardt*, 472 F.3d at 6-7 (finding no interrelation between operations when companies had "separate worksites which fulfilled wholly distinct functions" and different businesses of auto-parts and office supplies). The companies also share at least one corporate officer and director: Caroline Elaine Ochital, who is an Assistant Secretary for both Siemens Healthcare and Siemens Medical. ECF 9-2, at 1; ECF 9-3, at 2.[2] This commonality in corporate leadership supports both the allegation of an interrelation between the operations of Siemens Medical and Siemens Healthcare, and the allegation that the two entities shared some common management. *See Burnett*, 987 F.3d at 67 (holding that one common manager suffices to show evidence of the third factor, common management).

The final factor, common ownership, "looks at 'whether one company owns the majority or all shares of the other and if the entities share common officers or directors.'" *Burnett*, 987 F.3d

---

[2] "[A] court may consider a public record . . . outside the four corners of the complaint" if the "record, or the facts within it, are susceptible to judicial notice under Federal Rule of Evidence 201." *Gattineri v. Town of Lynnfield*, 58 F.4th 512, 514 n.2 (1st Cir. 2023). Courts "may take judicial notice of facts which are capable of being determined by an assuredly accurate source." *Does 1-6 v. Mills*, 16 F.4th 20, 26 n.3 (1st Cir. 2021) (quotation marks omitted). The exhibits appended to Miller's opposition brief, which are business entity summaries from the website of the Secretary of the Commonwealth of Massachusetts, are an assuredly accurate source. *See* ECF 9-2; ECF 9-3; *cf. Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of government website). The Court will therefore take judicial notice of these exhibits.

at 67 (quoting *Davis v. Ricketts*, 765 F.3d 823, 828-29 (8th Cir. 2014)). The First Circuit has found this factor met if one company is a wholly owned subsidiary of another, *Engelhardt*, 472 F.3d at 8, or if both companies are subsidiaries of a larger parent company, *Torres-Negron*, 488 F.3d at 43. Here, Siemens Healthcare is a wholly owned subsidiary of Siemens Medical, and both defendants are subsidiaries of Siemens Healthineers. ECF 16, at 1. Miller has, therefore, plausibly alleged common ownership.

The allegations in Miller's complaint, construed in the light most favorable to her, give rise to the plausible inference that Siemens Medical and Siemens Healthcare were a single integrated employer, such that Miller may seek to hold Siemens Medical responsible for her employment discrimination claims. Although Miller would need to introduce more robust evidence of the interrelationship between the two entities to prevail on her single integrated employer theory, the allegations in her complaint are sufficient, at this stage, to survive Siemens Medical's motion to dismiss. And because Miller has plausibly alleged that the defendants are a single integrated employer, the Court need not address her alternative theory that she was jointly employed by the defendants. *See Burnett*, 987 F.3d at 67-68.

## CONCLUSION

For the foregoing reasons, Siemens Medical's motion to dismiss, ECF 6, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: September 11, 2025